# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

STUART TWITCHELL,

    Plaintiff,

v.

WENDY PARIS, et al.,

    Defendants.

Case No. 2:06-0283-KJD-GWF

**ORDER**

    Currently before the Court is Plaintiff's Motion for Summary Judgment (#22), filed December 8, 2006. Defendants filed a Response (#24), on December 26, 2006, to which Plaintiff filed a Reply (#28), on January 10, 2007.

**I. Background**

    Plaintiff Stewart Twitchell ("Twitchell") a Nevada licensed real estate broker, on March 7, 2006, filed a Complaint against Wendy Paris, ("Paris") and Testamentary Trust, alleging causes of action for (1) breach of contract, (2) unjust enrichment, and (3) breach of covenant of good faith and fair dealing. Plaintiff's Complaint, and Motion for Summary Judgment allege that Paris breached a real estate commission agreement entered into between the parties by refusing to pay Twitchell a real

1  estate commission if he procured a purchaser of Defendants' ranch property.   In opposition, Paris
2  argues that various issues of material fact exist that preclude summary judgment.
3        According to Twitchell, in or around October 2001, he became aware that Jim West, Wade
4  West, and UU livestock-Nevada, L.L.C. (collectively referred to as "Wests") were interested in
5  purchasing a ranch in or near White Pine County, Nevada.  Shortly thereafter, Twitchell traveled to
6  the Bertrand Paris and Sons Livestock Sheep and Cattle Ranch (the "Paris Ranch") where he met
7  ranch owner, Wendy Paris, and inquired about whether she might be interested in selling the ranch.
8  Paris stated that she was interested, and Twitchell proposed that he would attempt to sell the Paris
9  Ranch if Paris would agree to pay him a real estate commission in the event that he found someone
10 willing to purchase the ranch.
11       Shortly thereafter, Twitchell contacted the Wests and discovered they were interested in
12 buying the Paris Ranch.  Twitchell then introduced the Wests to Paris and showed them the Paris
13 Ranch on October 14, and 15, 2001.  According to Twitchell, he then spent time investigating and
14 identifying the deeded acres, BLM grazing rights, and AUM permits relating to the Paris Ranch.
15 During this time, Twitchell presented and entered into a commission agreement with Paris that
16 provided *inter alia*, that Paris would pay Twitchell a real estate commission of "ten percent of the
17 gross sales price of any buyer, prepared by [Twitchell] to be ready, willing and able to purchase [the
18 Paris Ranch] in an amount agreed upon by Paris as evidenced by Paris['s] acceptance of an offer."
19 (Pl.'s Mot. for Summ. J. Ex. 1A.)   The commission agreement was to remain in force for 18 months
20 from the date of the signing and was to be honored for an additional nine months for any buyers
21 exposed to the Paris Ranch by Twitchell during the 18 month period.  The agreement was signed and
22 executed on October 15, 2001.
23       According to Twitchell, after showing the Paris Ranch to the Wests, Twitchell contacted
24 them to solicit a purchase offer.  Twitchell also contacted Paris on several occasions to find out if the
25 Wests had made a purchase offer directly to Paris.  Each time, Paris either denied that the Wests had
26 made an offer to purchase the Paris Ranch, or denied that she was willing to sell.

Twitchell states that he later discovered Paris began intensive negotiations directly with the Wests and their real estate broker Tom Gunn shortly after Twitchell had introduced the Wests to Paris and showed them the Paris Ranch. Twitchell also discovered that the Wests negotiated and entered into a lease option with Paris for the Paris Ranch sometime during the two years prior to making their final purchase offer. The Wests sent Paris a written purchase offer in October 2003, and made a final purchase offer on November 25, 2003. Paris accepted the Wests' purchase offer on December 10, 2003, for $1,700,000. Paris never informed Twitchell that the Wests had contacted her in regard to purchasing the Paris Ranch, and Twitchell was never involved in the negotiations of either the lease option or actual purchase. Twitchell claims that the sale was within the 27-month period provided for in the commission agreement, and that the commission due and owing to him is $170,000.

In opposition to Twitchell's Motion for Summary Judgment, Defendants argue that there are several issues of material fact barring summary judgment. *Inter alia*, Defendants contend that there are genuine issues of material fact regarding whether Twitchell was the procuring cause of the ultimate sale of the ranch property to the Wests; whether the terms of the ultimate sale were the proximate result of Twitchell's peculiar activities; whether the chain of events that Twitchell set in motion was broken prior to purchase; whether Twitchell abandoned efforts to consummate the sale of the ranch property; whether the term of the commission agreement expired prior to the ultimate sale; and whether the terms of the actual sale differed materially from those specified in the commission agreement.

**II. Standard of Law for Summary Judgment**

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

1  The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine
2  factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587
3  (1986); Fed. R. Civ. P. 56(e).
4      All justifiable inferences must be viewed in the light must favorable to the nonmoving party.
5  See Matsushita, 475 U.S. at 587.  However, the nonmoving party may not rest upon the mere
6  allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit
7  or other evidentiary materials provided by Rule 56(e), showing there is a genuine issue for trial. See
8  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The court need only resolve factual
9  issues of controversy in favor of the non-moving party where the facts specifically averred by that
10 party contradict facts specifically averred by the movant. See Lujan v. Nat'l Wildlife Fed'n., 497
11 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345
12 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine
13 issue of fact to defeat summary judgment).  "[U]ncorroborated and self-serving testimony," without
14 more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v.
15 Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).
16     Summary judgment shall be entered "against a party who fails to make a showing sufficient
17 to establish the existence of an element essential to that party's case, and on which that party will
18 bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Summary judgment shall not be granted
19 if a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 248.
20 **III. Analysis**
21     Under Nevada law, the determination of whether a broker is the procuring cause of a sale is a
22 question of fact that is generally not appropriate for summary judgment. See e.g., Carrigan v. Ryan,
23 858 P.2d 29, 32 (Nev. 1993).  Specifically, the Nevada Supreme Court has stated,
24
> Whether a broker's efforts constitute the 'procuring cause' of a sale is a question of
> fact.  Thus, this issue is not generally appropriate for summary judgment.  The
25 determination of this ultimate factual issue depends upon a close examination of the
> prevailing circumstances in each case.
26

4

Id. (citing Atwell v. Southwest Securities, 820 P.2d 766 (Nev. 1991)). In many cases, the Nevada Supreme Court has overturned a lower court's decision to grant summary judgment where the degree of procurement was at issue. See e.g., Carrigan, 858 P.2d at 33; Atwell, 820 P.2d at 770; Morrow v. Barger, 737 P.2d 1153, 1157–58 (Nev. 1987).

Although the concept of 'procuring cause' is not conducive to precise legal measurement, the Nevada Supreme Court has recognized some general principles applicable in making such a determination. See Carrigan, 858 P.2d at 32. For example, "a broker's efforts in bringing about the sale must be more than 'merely trifling.' Id. at 32–33 (quoting Binder v. Leavy Realty Co., 790 P.2d 497, 499 (1990)). Additionally, "'[w]hether the broker first approaches, or brings to the attention of the buyer that the property is for sale, or brings the buyer into the picture, has considerable weight in determining whether the [broker] is the procuring cause of the sale.'" Carrigan, 858 P.2d at 33 (citing Atwell, 820 P.2d at 770). "However, whether the broker initially introduces the buyer and seller is not dispositive as a matter of law." Carrigan, 858 P.2d at 33 (citing Morrow, 737 P.2d at 1157 (where brokers introduced buyers and sellers, issue of procuring cause still depended on whether brokers were the proximate cause of the sale). Furthermore, a broker is required to demonstrate that he was the proximate cause of the sale, Carrigan, 858 P.2d at 33, or that he/she "set in motion a chain of events which, without break in their continuity, cause the buyer and seller to come to terms as the proximate result of his or her peculiar activities." Id. at 32 (quoting Binder v. Leavy Realty Co., 790 P.2d 497, 500 (Nev. 1990)).

Without addressing the myriad reasons set forth in Defendants' Opposition explicitly, the Court finds that sufficient issues of material fact exist that preclude summary judgment. Specifically, and at a minimum, the Court finds that the determination of whether Plaintiff was the procuring cause of the ultimate sale of the Paris Ranch to the Wests is a genuine issue of material fact requiring a close examination of the circumstances of the case. That Plaintiff had a commission agreement and undisputedly introduced the buyer to the seller is not dispositive. Additionally, the Court finds a material issue of fact exists as to whether Plaintiff was the proximate cause of the ultimate sale of the

Paris Ranch to the Wests.  Therefore, viewing all justifiable inferences in the light most favorable to Defendants, the Court must deny Plaintiff's Motion for Summary Judgment at this time.

**IV. Conclusion**

For the reasons listed above, Plaintiff's Motion for Summary Judgment (#22) is hereby **DENIED**.

DATED this 27th day of September, 2007.

_____
Kent J. Dawson
United States District Judge